UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALEB TAYLOR #68055, | ) |
| Plaintiff, | ) NO. 3:20-cv-00747 |
| v. | ) |
| | ) JUDGE TRAUGER |
| KRISTEN SMITH, et al., | ) |
| Defendants | ) |

## MEMORANDUM AND ORDER

Caleb Taylor, a pretrial detainee in the Sumner County Jail in Gallatin, Tennessee, has filed a pro se civil rights action under 42 U.S.C. § 1983. (Doc. No. 1.) The matter is before the court for a ruling on the plaintiff's application to proceed in forma pauperis (IFP). (Doc. No. 2.) In addition, the complaint (Doc. No. 1) is before the court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from the plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the court **GRANTS** his motion (Doc. No. 2) to proceed IFP in this matter.

However, under Section 1915(b), the plaintiff nonetheless remains responsible for paying the filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, the plaintiff is hereby **ASSESSED** a $350 filing

fee, to be paid as follows:

The custodian of the plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's inmate trust account; or (b) 20% of the average monthly balance in the plaintiff's inmate trust fund account for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the trust fund officer must withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $400 filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

Each time the trust account officer makes a payment to this court as required by this order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify the plaintiff's name and the case number as indicated on the first page of this order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this order to the administrator of the Sumner County Jail to ensure that the custodian of the plaintiff's inmate trust account complies with the portion of 28 U.S.C. § 1915 pertaining to payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian **MUST** ensure that a copy of this order follows the plaintiff to his new place of confinement for continued compliance with this order.

## II.     INITIAL REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2), the court is required to conduct an initial review of any complaint filed in forma pauperis and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.  In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. Jan. 31, 2011).

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983.  Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).  Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

According to the complaint and attached documentation, the plaintiff lived in Castalian Springs, Tennessee, where he was under community supervision for life by the Tennessee

Department of Correction as the result of a previous conviction for aggravated sexual battery. (Doc. No. 1 at 7; Doc. No. 1-1 at 6.) On July 30, 2020, he went out into his neighborhood to search for a trailer that was missing from his property. (Doc. No. 1 at 7.) He equipped himself for the search by donning a number of items typically associated with law enforcement officers, including a tactical vest, handcuffs, pepper spray, tear gas, an air-soft gun resembling a Glock, a radio with earpiece, a 7-inch army knife, a taser, a baton, and a badge. (*Id.* at 7–8, 25.) A woman in the area called police to report "a suspicious person" and reported that the plaintiff had been on her property insisting that a trailer in her yard did not belong to her and repeatedly demanding that she give him the serial number of the trailer. (*Id.* at 25.) Responding officers made contact with the plaintiff and ultimately arrested him for multiple charges, including violation of community supervision rules, evading arrest, and resisting arrest. (*Id.* at 26.)

The plaintiff's 78 pages of complaint and attachments is rambling and suggests several factual disputes between his version of events and that of the charging officers about the circumstances of his arrest. But he consistently identifies his sole claim in this case as a violation of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (*Id.* at 4; Doc. No. 1-1 at 29.) He alleges repeatedly that the law requires law enforcement officers to read *Miranda* rights every time someone is arrested and that failure to do so means that the arrestee cannot be prosecuted for any charges. (Doc. No. 1 at 11–12, 21–22, 31–32, 35.) He sues several law enforcement officers, the prosecutor, and two state judges and seeks either dismissal of all pending charges brought against him in violation of his *Miranda* rights or money damages for violation of his *Miranda* rights. (Doc. No. 1 at 2–4, 12–13, 22–23, 32, 36; Doc. No. 1-1 at 29.)

The plaintiff's claim is unfounded and rests on a misunderstanding of the holding and application of *Miranda*. The Fifth Amendment to the United States Constitution protects a citizen

4

from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. In order to safeguard that right, the Supreme Court announced in *Miranda* that "[p]rior to any questioning, the person [in custody] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. The Court held that unless that warning is given and knowingly and voluntarily waived, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant." *Id.* But the *Miranda* rule does not create an independent constitutional right to such warnings. It is simply "a prophylactic measure to prevent violations of the right protected by the text of the Self–Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

The plaintiff does not allege that he was interrogated at the time of his arrest or that he gave any statement to the arresting officers or at any point before being warned about his right to remain silent. But even if the plaintiff were coerced into giving a custodial statement without being warned, that event itself would not amount to a constitutional violation:

> Statements compelled by police interrogations of course may not be used against a defendant at trial, *see Brown v. Mississippi*, 297 U.S. 278, 286 (1936), but it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs, *see United States v. Verdugo–Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is *a fundamental trial right* of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a constitutional violation occurs only at trial*" (emphases added; citations omitted)); *Withrow v. Williams*, 507 U.S. 680, 692 (1993) (describing the Fifth Amendment as a "'trial right'"); *id.*, at 705 (O'CONNOR, J., concurring in part and dissenting in part) (describing "true Fifth Amendment claims" as "the extraction *and use* of compelled testimony" (emphasis altered)).

*Chavez*, 538 U.S. at 767. Accordingly, a law enforcement officer's "failure to read *Miranda*

warnings to [an arrestee does] not violate [the arrestee's] constitutional rights **and cannot be grounds for a § 1983 action**." *Id.* at 772 (emphasis added).

Because the plaintiff's complaint fails to state a viable Section 1983 claim for violation of his constitutional rights, there is no need for the court to address whether this action would otherwise have to be stayed pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007) (referencing the "common practice" of staying a civil action pending the resolution of an underlying criminal prosecution) pending the conclusion of the related criminal charges against him.

### III. CONCLUSION

Accordingly, this action is **DISMISSED** for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Any appeal of this order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

This is the final order denying all relief in this matter. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b).

IT IS SO ORDERED.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE